IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA WOLFSON, | Case No. |
| Plaintiff, | |
| v. | COMPLAINT |
| SIGNIFY HEALTH, INC., MATTHEW S. HOLT, KYLE B. PETERSON, BRANDON H. HULL, KEVIN M. MCNAMARA, ALBERT A. NOTINI, ARNOLD GOLDBERG, KYLE ARMBRESTER, TAJ J. CLAYTON, VIVIAN E. RIEFBERG, and HEATHER DIXON, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff Barbara Wolfson ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this action against Signify Health, Inc. ("Signify" or the "Company") and the members of Signify's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to be acquired by CVS Pharmacy, Inc. ("CVS") through CVS' subsidiary Noah Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On September 2, 2022, Signify and CVS entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Signify stockholders will receive $30.50 in cash for each share of Signify common stock that they own.

3. On September 30, 2022, Signify filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction. The failure to adequately disclose such material information renders the Proxy Statement false and misleading.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes

whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's stock trades on The New York Stock Exchange, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Signify.

9. Defendant Signify is a Delaware corporation, with its principal executive offices located at 4055 Valley View Lane, Suite 700, Dallas, Texas 75244. Signify's common stock trades on The New York Stock Exchange under the ticker symbol "SGFY."

10. Defendant Matthew S. Holt is, and has been at all relevant times, Chairman and a director of the Company.

11. Defendant Kyle B. Peterson is, and has been at all relevant times, a director of the Company.

12. Defendant Brandon H. Hull is, and has been at all relevant times, a director of the Company.

13. Defendant Kevin M. McNamara is, and has been at all relevant times, a director of the Company.

14. Defendant Albert A. Notini is, and has been at all relevant times, a director of the Company.

15. Defendant Arnold Goldberg is, and has been at all relevant times, a director of the Company.

16. Defendant Kyle Armbrester is, and has been at all relevant times, Chief Executive Officer and a director of the Company.

17. Defendant Taj J. Clayton is, and has been at all relevant times, a director of the Company.

18. Defendant Vivian E. Riefberg is, and has been at all relevant times, a director of the Company.

19. Defendant Heather Dixon is, and has been at all relevant times, a director of the Company.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants," and together with Signify, "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **Background of the Company**

21. Signify operates a healthcare platform that utilizes analytics, technology, and healthcare provider networks. The Company operates through Home & Community Services and Episodes of Care Services segments. The Home & Community Services segment offers health evaluations performed within the patient's home or at a healthcare provider facility primarily to Medicare Advantage health plans; diagnostic screening and other ancillary services; and services to address healthcare concerns related to social determinants of health. The Episodes of Care Services segment provides services to enhance the healthcare delivery through developing and managing episodic payment programs in partnership with healthcare providers under the Bundled

Payment for Care Improvement Advanced program with Centers for Medicare and Medicaid Services; and care management services.

B. **The Proposed Transaction**

22. On September 5, 2022, Signify and CVS issued a joint press release announcing the Proposed Transaction stating, in pertinent part:

> WOONSOCKET, R.I., DALLAS and NEW YORK, Sept. 5, 2022 — CVS Health® (NYSE:CVS) and Signify Health (NYSE: SGFY) ("Signify") have entered into a definitive agreement under which CVS Health will acquire Signify Health for $30.50 per share in cash, representing a total transaction value of approximately $8 billion.
>
> Signify Health is a leader in Health Risk Assessments, value-based care and provider enablement.  With a network of more than 10,000 clinicians across all 50 states and a nationwide value-based provider network, combined with its proprietary analytics and technology platforms, Signify Health is improving patient engagement, patient outcomes and care coordination for stakeholders across the health care system.  Signify Health's clinicians and providers can have an even greater impact by engaging with CVS Health's unique collection of assets and connecting patients to care how and when they need it.
>
> "Signify Health will play a critical role in advancing our health care services strategy and gives us a platform to accelerate our growth in value-based care," said CVS Health President and CEO, Karen S. Lynch.  "This acquisition will enhance our connection to consumers in the home and enables providers to better address patient needs as we execute our vision to redefine the health care experience.  In addition, this combination will strengthen our ability to expand and develop new product offerings in a multi-payor approach."
>
> Signify Health's network of clinicians – physicians, nurse practitioners and physician assistants – utilize home-based visits to identify a patient's clinical and social needs, and then connect them to appropriate follow-up care and community-based resources in order for the patient to have a more connected, effective care experience.  In 2022, Signify Health's clinicians expect to connect with nearly 2.5 million unique members in the home, both in-person and virtually, and on average they spend 2.5 times longer with a patient in the home than providers spend in the average primary care office visit.
>
> Notably, since acquiring Caravan Health in March 2022, Signify Health has further expanded its focus on value-based care and population health.  Today, Caravan is already a partner to over 170 providers participating in accountable care organizations (ACOs) serving Medicare beneficiaries with a focus on improving the health of underserved communities.  Signify Health recently announced that its

ACOs generated more than $138 million in gross savings in 2021, and in 2023 the Caravan business is expected to serve ACOs representing over 700,000 people – rivaling many standalone platforms.  As part of CVS Health, Signify Health will continue to advance its extensive primary care enablement capabilities, including turnkey analytics, network, and practice improvement solutions, to help providers transition to value-based reimbursement and improve quality of care.

"Signify Health's mission is to build trusted relationships to make people healthier by using actionable intelligence to understand what's really impacting outcomes and cost today," said Kyle Armbrester, CEO of Signify Health.  "As we carefully considered our long-term strategic options, we determined that CVS Health is the ideal partner, given its focus on expanding access to health services and helping consumers navigate to the best sites of care.  We are both building an integrated experience that supports a more proactive, preventive and holistic approach to patient care, and I look forward to executing on our shared vision for the future of care delivery."

"We formed Signify Health and recruited Kyle and the team to build a strategic innovation platform focused on leveraging technology as a catalyst for connecting key health care stakeholders to drive better patient outcomes," said Matt Holt, Chairman of the Board, Signify Health and President of Private Equity and Managing Director at New Mountain Capital, which owns a majority stake in Signify Health.  "Together with CVS Health, Signify is uniquely positioned to continue to lead the transformation to value-based care.  We look forward to the significant impact this transaction will make on health care for years to come."

Following the close of the transaction, Kyle Armbrester will continue to lead Signify Health as part of CVS Health. Signify Health's extensive network of over 50 health plan clients and their members will further augment CVS Health's longstanding and leading offering of payor-agnostic solutions for a diverse set of health plan and employer clients.

**Transaction details**

CVS Health will acquire Signify Health's stock for $30.50 per share.  CVS Health expects to fund the transaction with existing cash from its balance sheet and available resources and is committed to maintaining its current credit ratings.  The transaction was approved by the Board of Directors at each of the respective companies.  It is subject to approval by a majority of Signify Health's stockholders, receipt of regulatory approval and satisfaction of other customary closing conditions. Private equity funds affiliated with New Mountain Capital, which owns approximately 60% of the common stock of Signify Health, have agreed to vote the shares they own in favor of the transaction, subject to customary exceptions.  CVS Health and Signify Health anticipate that the transaction will close in the first half of 2023.

"This is a major step as we continue to execute on our strategy," said CVS Health Executive Vice President and Chief Financial Officer Shawn Guertin. "We expect the acquisition to be meaningfully accretive to earnings and, as a result, are increasingly confident we can achieve our long-term adjusted EPS goals as outlined at our Investor Day in December 2021."

**Joint Conference Call and Webcast**

CVS Health and Signify Health will hold a joint conference call for analysts and investors on September 6, 2022 at 8:30 a.m. ET. An audio webcast of the conference call will be broadcast simultaneously on the Investor Relations portion of the CVS Health website at investors.cvshealth.com where it will be archived for a period of one year.

**Advisors**

BofA Securities is serving as financial advisor to CVS Health. CVS Health was advised on legal matters by Fried, Frank, Harris, Shriver & Jacobson LLP, Dechert LLP, and McDermott Will & Emery LLP. Goldman Sachs & Co. LLC and Deutsche Bank Securities Inc. are serving as financial advisors to Signify Health. Ropes & Gray LLP is acting as Signify Health's legal advisor.

**C. False and Misleading Statements and/or Material Omissions in the Proxy Statement**

23. On September 30, 2022, Defendants filed the materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Signify's stockholders. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information.

24. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

25. First, the Proxy Statement omits material information or provides materially misleading information regarding the Company's financial projections. Specifically, the Proxy

Statement fails to disclose the line items underlying the Company's: (i) Adjusted Gross Profit; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

26. Courts have routinely held management's financial projections are among the most important information a stockholder can have when evaluating the proposed consideration in a merger. See Brown v. Brewer, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) (denying defendants' motion for summary judgment on the issue of management's financial projections, the court held that "A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. [T]here is a substantial likelihood that a reasonable shareholder would consider it important in making his decision.") (brackets in original) (internal quotation marks omitted); In re Netsmart Techs., Inc., S'holders Litig., 924 A.2d 171, 203 (Del. Ch. 2007) (company's financial projections "are probably among the most highly-prized disclosures by investors"); In re Staples, Inc. S'holders Litig., 792 A.2d 934, 958 n.44 (Del. Ch. 2001) ("One suspects that the projections are the information that most stockholders would find the most useful to them."). See also SEC v. Nat'l Student Mktg. Corp., 457 F. Supp. 682, 707 (D.D.C. 1978) (quoting Republic Technology Fund, Inc. v. Lionel Corp., 483 F.2d 540, 547 (2d Cir. 1973)) ("In a merger transaction such as that presented here, accurate financial information is necessary in order for a shareholder fairly to be able to vote.").

27. Second, the Proxy Statement omits material information regarding the financial analyses performed by Goldman Sachs & Co. LLC ("Goldman") and Deutsche Bank Securities Inc. ("Deutsche Bank").

28. With respect to Goldman's Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of

9.5% to 11.5%; (ii) Signify's total debt and debt-like items; (iii) Signify's unrestricted cash and cash equivalents as of June 30, 2022; (iv) the net present value of the benefit of tax assets covered by the TRA net of the liabilities owed under the TRA; and (v) Signify's common stock outstanding on a fully diluted basis.

29. With respect to Goldman's Illustrative Present value of Future share Price Analysis, the Proxy Statement fails to disclose: (i) Signify's total debt and debt-like items; (ii) Signify's unrestricted cash and cash equivalents; (iii) Signify's WACC used in the analysis; and (v) Signify's common stock outstanding on a fully diluted basis as of December 31, 2022, 2023 and 2024.

30. With respect to Goldman's Selected Precedent Transactions Analysis and Selected Public Company Comparables, the Proxy Statement fails to disclose the financial metrics observed for each of the selected transactions and companies.

31. With respect to Goldman's Premia Analysis, the Proxy Statement fails to disclose: (i) each of the transactions reviewed and analyzed; and (ii) the premia paid in each of the selected transactions.

32. With respect to Deutsche Bank's Analysis of Selected Publicly Traded Companies and Analysis of Selected Precedent Transactions, the Proxy Statement fails to disclose the financial metrics observed for each of the selected companies and transactions.

33. With respect to Deutsche Bank's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose the inputs and assumptions underlying the discount rate range of 9.6% to 10.7%.

34. With respect to Deutsche Bank's Premia Paid Analysis, the Proxy Statement fails to disclose: (i) each of the transactions reviewed and analyzed; and (ii) the premia paid in each of the selected transactions.

35. The omission of the above-referenced material information renders the following sections of the Proxy Statement false and misleading: "Certain Unaudited Prospective Financial Information," "Opinion of Goldman Sachs & Co. LLC" and "Opinion of Deutsche Bank Securities Inc."

## COUNT I

### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

38. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

40. By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

41. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth in full.

43. The Individual Defendants acted as controlling persons of Signify within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Signify, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Signify's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Signify stockholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 30, 2022

Respectfully submitted,

By /s/ *Shallom Engel*
Shallom Engel
**Engel Law PLLC**
2329 Nostrand Avenue, Suite 100
Brooklyn, NY 11210
Telephone: (718) 880-8595
Email: shallom@engellawpllc.com

*Attorneys for Plaintiff*